UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CRIMINAL ACTION NO. 2:13-CR-12-DLB-EBA-1
CIVIL ACTION NO. 2:18-CV-88-DLB-EBA

| | |
|---|---|
| UNITED STATES OF AMERICA, | PLAINTIFF, |
| V.    **RECOMMENDED DISPOSITION** | |
| RONNIE E. FRISKEY, | DEFENDANT. |

\*\*\* \*\*\* \*\*\* \*\*\*

## I. INTRODUCTION

The Defendant, Ronnie E. Friskey, brings this action under Title 28 United States Code § 2255 seeking to vacate, set aside, or correct his sentence. [R. 207]. Consistent with local practice, this matter is before the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having considered the record and for the reasons that follow, the Court will recommend that Friskey's motion be denied.

## II. FACTS AND PROCEDURAL HISTORY

On March 14, 2013, Ronnie E. Friskey was indicted for intentionally manufacturing one hundred or more plants of marijuana in violation of 21 U.S.C. § 841(a)(1), and for possessing a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1). [R. 1]. The evidence which produced these charges was discovered at Friskey's home on November 13, 2012. It is 'how' the evidence was discovered that is the root of Friskey's exceptionally long, three-years, path to trial, and the foundation for his Motion to Vacate.

On November 13, 2012, Friskey lived in Kenton County, Kentucky. [R. 166]. A number of burglaries and crime related activity had been reported in this area around that time. Based upon the known crime in the area and after seeing a suspicious white male prowling around a residence, Friskey's neighbor called 911. Officers responded quickly to the call and upon reaching the scene

searched a house they believed to be the one associated with the call. However, upon finding no one inside and nothing disturbed they returned to their police cruisers parked outside on the street. It was at this point that Friskey's neighbor approached the officers, identified himself as the 911 caller, and informed the officers that they had searched the wrong house. Friskey's neighbor indicated that it was the house next door, Friskey's house, where he saw the white male prowling about. Also, a strange truck, possibly associated with the prowler, was parked in a church parking lot across from the house in question. At this point the officers split up, one or two going towards the truck in the church parking lot and the others towards the second house. Upon reaching the house, the officers discovered that both the front and back door were unlocked. Also, it is important to note that while inspecting the house the officers found large windows very close to the ground which indicated there most likely was a basement.

     Believing that a burglary might be in progress, and to secure the home and ensure the safety of anyone inside, the officers made entry through the front door and performed a protective sweep of the house. It was at this point, entry into the home, that the officers were confronted with the very strong peculiar, but familiar, odor of marijuana. After searching the open areas of the main floor without finding anyone inside, the officers attempted to find the basement. Based on the windows outside the officers knew there had to be one. Oddly enough, the officers discovered a strange corridor adjacent to the kitchen which seemed out of place. When the officers entered the corridor, they discovered a trap door hidden under the carpet which led to the basement. As soon as the officers opened the trap door the smell of marijuana grew stronger. Upon entering the basement, the officer discovered a very large marijuana grow operation, but still did not locate a person or a burglar. The officers then exited the residence, whereupon Officer Schihl departed to meet with Assistant Commonwealth's Attorney to attempt to obtain a search warrant for the

residence, based on the marijuana grow which was discovered in the basement during the protective sweep. The remaining officers stayed on sight and secured the house in anticipation of the search warrant. Approximately two-hours later a search warrant was obtained and the officer on sight executed the warrant.

Ironically, during the execution of the warrant the officers found the burglary suspect, later identified as Devin Mason, hiding behind a large dresser in an open room on the first floor. Mason later told officers that he had initially been hiding in a closet under a pile of clothes. Also found during the execution of the warrant were two firearms, previously undiscovered, and approximately 571 marijuana plants in the basement. Evidently, Friskey became aware that his grow operation had been discovered by the police, because on that same day he and his wife had picked up their children from school and fled the area. Friskey was eventually picked up in August of 2014, by the state of Ohio on state charges for selling marijuana, and following resolution of those charges he was transferred to federal custody. [R. 11].

Upon transfer to federal custody, James Stephen Smith was appointed to be Friskey's first attorney in this matter. *See* [R. 12; R. 15]. Smith almost immediately upon being appointed filed a motion to suppress any evidence obtained in violation of Friskey's Constitutional rights. *See* [R. 16; R. 19; R. 23]. Unfortunately for Friskey, following an evidentiary hearing on the issue, the Court ruled against the motion. [R. 23]. The Court held that based on probable cause and exigent circumstances the officers were justified in entering the home. [*Id*.]. Then almost a month later Smith filed a motion to withdraw as Friskey's attorney. *See* [R. 25]. In Smith's affidavit attached to his motion to withdraw he stated that Friskey refused to visit and communicate with him, and if Friskey would not communicate with him he could not be an effective counsel. [R. 25-1]. After a

hearing, the Court granted Smith's motion to withdraw and gave Friskey 30-days to find private counsel or otherwise inform the Court if he could not obtain counsel. [R. 27].

Clyde Bennett II was hired by Friskey's as his second attorney, and he appeared *pro hac vice* from Ohio. [R. 32; R. 33]. Prior to Bennett's appointment, Friskey had filed his first *pro se* motion. [R. 30]. His motion demanded disclosure of evidence, which the Court denied based on prior counsels request for discovery, the Court's standard pretrial and trial management order, and retention of new counsel. [R. 33]. Bennett later moved and was granted a continuance of the trial date, [R. 35; R. 38], which he followed with a supplemental motion to suppress. [R. 39]. The Court denied Friskey's supplemental motion to suppress, because the issues raised were hypertechnical, factually inaccurate, and did not rise to the level of such a remedy. [R. 42]. Friskey then filed a motion for rearraignment and eventually conditionally plead guilty, reserving his right to appeal his motion to suppress. [R. 45, R. 47; R. 49]. Yet, before he could be sentenced Friskey filed two motions, the first to have Clyde Bennett removed as his counsel, and the second to withdraw his guilty plea. *See* [R. 55; R. 56; R. 57]. The Court granted Friskey's motion to remove Clyde Bennett as counsel, took the motion to withdraw the plea under submission pending further hearing, and appointed Dennis C. Alerding to represent Friskey. [R. 70].

Dennis C. Alerding became Friskey's third attorney in this matter. [*Id*.]. After two hearings Friskey successfully withdrew his guilty plea. *See* [R. 71; R. 75]. It is at this point that Friskey began to start filing additional *pro se* motions which were ultimately denied by the Court. *See* [R. 81 ("Any further pro se submissions will not be considered.")]. Additionally, defense counsel Alerding filed a motion to have Friskey's mental competency evaluated, because based on their conversations counsel was afraid that Friskey may be suffering from a mental disease or defect rendering him unable to assist properly in his defense. [R. 80]. The motion to determine

competency was granted. *See* [R. 83; R. 84]. A few months later Friskey moved, *pro se*, for Judge Bunning to recuse. *See* [R. 92]. Additionally, Friskey filed the following *pro se* motions: a motion to stay, [R. 93]; a notice of appeal of his competency evaluation, [R. 94][1]; a motion to vacate the order denying his motion to suppress based on ineffective assistance of counsel, [R. 97]; a motion for an order for production of police records, [R. 98]; a motion to reveal deals or concessions, [R. 99]; and a motion to order defense counsel to comply with Federal Rules of Criminal Procedure 16(a)(1)(E), [R. 102][2]. The Court held a competency hearing on February 9, 2016. *See* [R. 107]. At the competency hearing the Court found Friskey to be competent to stand trial, denied as withdrawn the motion to recuse, [R. 92], and stay, [R. 93], took motions [R. 97], [R. 98], [R. 99], and [R. 102], under submission, directed Friskey to file any request to waive his Sixth Amendment right to counsel and represent himself at trial by March 3, 2016, and scheduled the matter for trial on March 28, 2016. [R. 107; 179]. By separate order the Court denied motions [R. 98], [R. 99], and [R. 102]. *See* [R. 110].

This left motion [R. 97], Friskey's motion to vacate the order denying his motion to suppress based on ineffective assistance of his first defense counsel, James Stephen Smith. Given the unique circumstances presented at this point in the case, the Court decided to address this motion on the merits. [R. 111 at 2]. After recognizing the unique posture of considering an ineffective assistance of counsel claim at this stage of the proceeding, the Court held that defense counsel Smith was not ineffective and denied Friskey's motion, [R. 97]. *See* [R. 111 at 8]. This however was not Friskey's last *pro se* pretrial motion. Friskey filed five additional motions before trial, one in particular was a motion for appointment of substitute counsel. [R. 133]. After an extended hearing, his motion for substitute counsel was denied and his case proceeded to trial the

---

[1] At this point Friskey's competency had not yet been determined by the Court.
[2] Friskey contends that FRCP 16(a)(1)(E) requires his counsel to allow him to inspect the discovery against him.

following week. *See* [R. 139; R. 181 (Transcript of Hearing.)]. Then after a three-day jury trial Friskey was convicted of count one, manufacturing a controlled substance in excess of 100 or more marijuana plants, but acquitted on count two, possessing a firearm in furtherance of drug trafficking. *See* [R. 153; R. 156].

Prior to Friskey being sentenced, both the United States and the Defense filed objections to the presentence report. [R. 166 (Presentence Report); R. 159 (Government's Objections); R. 160 (Defense's Objections)]. On August 11, 2016, the Court heard the objections to the presentence report, which were denied, and sentenced Friskey to 90-months imprisonment, followed by five-years of supervised release. [R. 161; R. 163 (Judgment); R. 190 (Sentencing Transcript)]. Friskey requested the clerk to file a notice of appeal before his sentencing hearing was concluded. [R. 164 (Notice of Appeal); R. 190 at 51-52 (Transcript of Sentencing)]. Defense counsel Alerding requested and was granted permission by the Sixth Circuit to withdraw as counsel. [R. 168]. Subsequently, the Sixth Circuit appointed Steven Richard Jaeger to represent Friskey in his appeal, and Jaeger ultimately became Friskey's fourth and last attorney in this matter. [R. 172]. At last the Sixth Circuit affirmed Friskey's conviction and sentence, and the United State Supreme Court denied his Writ of Certiorari. *See* [R. 200 (Sixth Circuit Judgment); R. 201 (Sixth Circuit Mandate); R. 204 (U.S. Supreme Court denial of Certiorari.)].

Almost six-months later, on May 24, 2018, Friskey filed his present Motion to Vacate. [R. 207]. In his motion, Friskey argues that: (1) his counsel was ineffective for failing to investigate and call certain witnesses; (2) his counsel was ineffective for failing to challenge the supposedly illegal entry into his residence; and (3) his counsel was ineffective for allowing him to be sentenced on acquitted conduct. *See* [R. 207-1 (Memorandum in Support)]. Friskey's motion now stand ripe for adjudication.

### III. STANDARD OF REVIEW

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he must show that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003), cert. denied, 540 U.S. 1133 (2004); *see also Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003), cert. denied, 540 U.S. 879 (2003). He must sustain these allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (unpublished); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). If the prisoner alleges a constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993); *Pough*, 442 F.3d at 964. Alternately, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

To prevail on an ineffective assistance of counsel claim under Section 2255, the petitioner must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. In applying this test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance . . ." *Id.* Second, the petitioner must establish prejudice, by

showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694–95. Notably, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

## IV. ANALYSIS

At the outset it is important to note that during the course of this matter Friskey had three separate attorneys at the trial level who represented him at different stages of the case, as well as a completely different attorney to represent him on appeal. When referencing his ineffective assistance of counsel claims in his memorandum of support he fails to address which attorney took, or failed to take, certain action that rendered them ineffective. Rather, Friskey only states that "counsel" was ineffective at pretrial, at trial, at sentencing, and on appeal. [R. 207-1 at 4]. This leaves the only rational conclusion to be that Friskey's intent was to press his claims against the

attorney who represented him at the time the conduct in question occurred. Regardless, as addressed below, his arguments provide no grounds for relief.

### A. Failure to Investigate and Call Witnesses.

Friskey first argues that his "attorney was ineffective for [failing] to investigate and call several witnesses at [his] suppression hearing and trial." [R. 207-1 at 6]. Addressing the motion to suppress first, the evidentiary hearing for the motion to suppress was held on November 17, 2014, when James Smith represented Friskey. [R. 20]. The motion was denied by the Court following the hearing. *See* [R. 111]. Friskey has contested the denial of his motion to suppress multiple times, including filing a supplemental motion to suppress, [R. 39], a renewed motion to suppress, [R. 137], and a motion to vacate the order denying the motion to suppress based on ineffective assistance of counsel, [R. 97]. Friskey now appears to be claiming that had Smith investigated and called three (3) people[3] to testify at the hearing the outcome would have been different. Notwithstanding, this argument is insufficient to overcome the presumption that his counsel's conduct was reasonable, and thus it fails to show actual prejudice.

"Complaints of ineffective assistance of counsel based upon 'uncalled witnesses' are not favored in federal habeas corpus review because mere unsupported allegations about what testimony potential witnesses might have given are far too speculative." *Talley*, 2006 WL 3422997, *9. "[A]llegations about the substance of possible testimony that could have been offered by witnesses who were not called at trial must be viewed with great caution." *Id*. (citing *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001); *United States v. Luciano*, 158 F.3d 655, 660 (2nd Cir. 1998); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *United*

---

[3] (1) Devon Mason, (2) Breanna Holt (Devon's girlfriend), and (3) Victor Ponzer.

*States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978); *Lopez v. United States*, 2006 WL 2404048, * 24 (N.D. Ohio Aug. 18, 2006).

In order for Friskey to succeed on this claim he must, "at the very least … submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial [or a hearing] and able to give testimony favorable to [the] defense." *United States v. Strickland*, No. 5:15-CR-79-DCR-HAI-2, 2018 WL 1867164, at *8 (E.D. Ky. Jan. 22, 2018) (citing *Talley v. United States*, No. 1:00-CV-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006); *See also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("Under whatever framework, however, evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Failing to present such affidavits will prevent the court from being able to make any real assessment of how any potential testimony would have affected the outcome of the case. *Strickland*, 2018 WL 1867164, at *8. Moreover, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy…." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981). Trial counsel's tactical decisions must be particularly egregious before they will provide a basis for relief. *Rose*, 744 F.2d at 1249.

In this case, Friskey has not provided any affidavits to show what exactly the three potential witnesses would have testified to at the evidentiary hearing, or how their testimony would have affected the outcome. As a result, the Court cannot accept and rely on Friskey's bare, conclusory allegations about what *he* believes the persons *might* have testified to at the hearing. *See Talley*, 2006 WL 3422997, *9; *See also Ashimi*, 932 F.2d at 650 ("A defendant cannot simply state that

the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Instead, Friskey must show that counsel's suspected error had an impact on the final judgment and "caused [him] to lose what he otherwise would probably have won." *Seabold*, 73 F.3d at 84 (quoting *Morrow*, 977 F.2d at 229). None of this has been shown.

Similarly, absent an affidavit from the witnesses to support his argument, Friskey has failed to support his claim that his counsel, Dennis Alerding, should have investigated and called these same three witnesses at trial. Nevertheless, Friskey's argument in this context is also factually inaccurate. First, Devon Mason, the burglar, was called as a witness at Friskey's trial. [R. 150 (Witness List); R. 184 at 54-67 (Transcript of Testimony)]. Devon testified at length about how he entered the house and what he attempted to steal, but maintained that his memory was distorted and foggy because he was in withdrawal from drugs at the time. [R. 184 at 54-67]. There is nothing to indicate that Devon's testimony would now be any different, and there is no indication that a change in his testimony would have altered the outcome of the case. Secondly, Victor Ponzer, the 911 caller, was subpoenaed to be a witness, but after Alerding interviewed him it was "determined [Mr. Ponzer] had nothing to offer to [the] case." [R. 184 at 270 (Transcript at trial.)]. Mr. Alerding discussed not calling Mr. Ponzer as a witness with Friskey, and on the record Friskey agreed there was no reason to call Mr. Ponzer as a witness. *See* [R. 184 at 270]. Lastly, Breanna Holt, Devon Mason's girlfriend, was the person parked in the truck across the street in the church parking lot. However, Friskey offers no affidavit to establish what her testimony would be, or how it would affect the outcome of the case.

In sum, because Friskey has failed to provide the proposed testimony of the witnesses, demonstrating how their testimony would have been essential to securing a different outcome in his case, he has not met his burden of proving that counsel's alleged errors caused him to lose what

he otherwise would probably have won. *Seabold*, 73 F.3d at 84 (quoting *Strickland*, 466 U.S. at 691); *Morrow*, 977 F.2d at 229. This claim provides Friskey no relief.

### B. Failure to Challenge Initial Entry.

Friskey next claims that his attorney was ineffective because he did not challenge the initial entry of his home. See [R. 207-1 at 9-11]. Again, Friskey fails to identify which attorney failed to challenge this issue. Friskey's attorney at the time of the initial hearing on the motion to suppress was James Smith. Friskey is correct to state that his attorney did not contest the initial entry into the home. At the evidentiary hearing Smith reiterated that after discussing this with Friskey, they would not contest the initial entry because "the officers were legitimately called to the scene." *See* [R. 85 at 3 ("We have no reason to believe that the phone call didn't happen or that the police got there incorrectly.")]. It was Smith's intention to argue in the motion to suppress that what happened after the police arrived and entered the home amounted to an illegal search and seizure.[4] [*Id.*].

This is clearly an additional attempt by Friskey to relitigate his motion to suppress. In the resolution of Friskey's motion to suppress, the Court addressed the officers' initial entry into Friskey's residence. The Court held that "[b]ased on [the information from the 911 caller, the presence of a suspicious vehicle across the street, and the doors to the residence being unlocked], the officers had probable cause to believe that a burglary was in progress, and therefore an exigency justified their entry into the home." *See* [R. 23 at 5-6]. In an attempt to overcome this conclusion, Friskey filed a motion to vacate the order denying his motion to suppress based on ineffective assistance of counsel claims. *See* [R. 97]. Effectively, Friskey made the same argument in that motion as he does here, ergo ineffectiveness for failing to challenge the initial entry into his residence. [*Id.*]. The Court found Smith not to have been ineffective, because Friskey could not

---

[4] Smith argument was that the officers exceeded the scope of a permissible protective sweep. *See* [R. 85 at 71].

establish prejudice. This was based on the fact that "even if counsel had made the arguments [Friskey] wanted him to make with respect to the initial entry, the facts as found by the Court were sufficient to establish probable cause." [R. 111 at 7]. Following the Court's ruling on the motion to suppress, any effort by one of Friskey's subsequent attorneys would have been in vain. *See United States v. Purcell*, 526 F.3d 953, 962 (6th Cir. 2008) (A defendant is not entitled to bring an interlocutory appeal challenging a district court's denial of a pretrial motion to suppress.). Friskey's only chance was to appeal the Court's order following the conclusion of his case.

Inevitably, Friskey also argued this point on appeal, specifically that "there was no exigent circumstances justifying the officers' entry into Friskey's home," and "the officers were not permitted to engage in a protective sweep of his house." *See* [R. 201 at 4]. The Sixth Circuit held that officers' initial entry into the home was permissible and that Friskey's argument that the officers were not permitted to conduct a protective search of the home failed. [*Id*. at 5-6] (citing *United States v. Johnson*, 9 F.3d 506, 510 (6th Cir. 1993) (police officers' search of a residence was justified because "it would defy reason to suppose that [the officers] had to secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested") (citation omitted)). Thus, while the outcome may not be to Friskey's approval, this issue has already been fully litigated.

"Issues which are fully, fairly presented and considered on direct appeal may not be relitigated in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law." *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States,* 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996). As there are no grounds to consider this an exceptional circumstance nor has there been an intervening change in the law Friskey's is unable

to relitigate this issue here. Thus, this claim fails to provide Friskey any relief as he has failed to show how his counsel's conduct was deficient or how he was prejudiced by this conduct. *Strickland*, 466 U.S. at 689-90.

### C. Sentence Based on Acquitted Conduct.

Friskey's third and final claim is that his counsel was ineffective for allowing him to be sentenced based on acquitted conduct. Yet again, Friskey fails to state which attorney failed to challenge the sentence which was imposed against him. At the time Friskey was sentenced Dennis Alerding was counsel of record. Friskey is correct, he was in fact acquitted of possessing a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1). [R. 156]. However, Friskey was subject to a two-level increase in his offense level for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1). [R. 166 at 7]. His attorney, Mr. Alerding, objected to this enhancement. [*Id*. at 20]. In the United States Probation Office response to this objection it stated that it was the position of the Probation Office that the two-level enhancement "has been applied appropriately in this matter." [Id. at 27]. In addition, the Probation Office stated that "[s]ince this objection may impact the advisory sentencing guideline range, the Court will need to make a finding as to this objection." [*Id*.].

Ultimately, the Court overruled Friskey's objection to the two-level enhancement for possessing a gun pursuant to Section 2D1.1(b)(1). *See* [R. 190 at 27-26]. The Court stated that:

> While the Court agrees with the jury's verdict on the 924(c) count, the preponderance-of-the-evidence standard used in the sentencing manual is far less stringent, especially when it comes to these dangerous weapon enhancements pursuant to Section 2D1.1(b)(1). The fact that the defendant was acquitted on Count 2 is in no way determinative of his objection. His acquitted conduct is not - - there's no bar in using that for sentencing purposes.
>
> A couple of brief reasons why the enhancement applies in the Court's view and the defendant's objection will be overruled. First,

> the defendant admitted that his sole source of income for 2011 and '12 was marijuana cultivation and trafficking, and he obtained the guns approximately three to four weeks before the bust.
>
> Additionally, the fact that the .22 caliber rifle was loaded, was found in his bedroom, or office – I can't remember exactly where – and it was found significantly – in the Court's view for purposes of the enhancement, while the jury may have rejected it for purposes of beyond a reasonable doubt, I think for purposes of the enhancement, I think it's fair to consider the fact that the rifle, .22 rifle, was found in relative close proximity to several thousand dollars in drug proceeds, which the defendant admitted was all based from his marijuana cultivation. That was his sole source of income for approximately 18 months.
>
> Although these facts may have been insufficient to support the 924(c) count, they are sufficient to support a two-level enhancement pursuant to Section 2D1.1(b)(1).

[R. 190 at 26-27].

While Friskey may have been unsatisfied with the Court's holding, he cannot factually argue that his attorney did not challenge the enhancement, because he clearly did. Also, Friskey's attorney on appeal, Steven Jaeger, also challenged the two-level enhancement for his possession of the .22-caliber rifle. *See* [R. 201 at 7]. The Sixth Circuit held that Friskey "failed to show it was clearly improbable that the .22-caliber rifle was connected to his manufacture of marijuana, the district court did not clearly err in applying the § 2D1.1(b)(1) enhancement. [*Id*. at 9] (citing *United States v. Greeno*, 679 F.3d 510, 515 (6th Cir. 2012) ("affirming a § 2D1.1(b)(1) enhancement where firearms 'were found throughout [Defendant's] property in relatively close proximity to drugs and drug paraphernalia' and 'regardless of where [Defendant] was on the property, he had ready access to the firearms'"); *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) ("affirming a § 2D1.1(b)(1) enhancement when defendant had 'dominion over the house where the gun was found'")).

Like his last claim, Friskey cannot argue this claim here either, because this issue was fully and fairly litigated. "Issues which are fully, fairly presented and considered on direct appeal may not be relitigated in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law." *Wright*, 182 F.3d at 467; *Jones,* 178 F.3d at 796; *Oliver*, 90 F.3d at 180; *DuPont*, 76 F.3d at 110-11. As there are no grounds to consider this an exceptional circumstance nor has there been an intervening change in the law Friskey is unable to relitigate this issue here. Thus, this claim, as well as the aforementioned claims, fails to provide Friskey any relief as he has failed to show how his counsel's conduct was deficient or how he was prejudiced by this conduct. *Strickland*, 466 U.S. at 689-90.

### V. MOTION FOR HEARING

Pursuant to Rule 4, Rules Governing § 2255 Proceedings, a motion to vacate may be summarily denied if it plainly appears from the face of the motion and any annexed exhibits that the movant is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). In the alternative, "When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required 'to determine the truth of the petitioner's claims.'" *Ray v. United States*, 721 F.3d 758, 761 (*quoting Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007)). The Sixth Circuit has observed that a § 2255 petitioner's "burden 'for establishing an entitlement to an evidentiary hearing is relatively light.'" *Smith*, 348 F.3d at 551 (*quoting Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). However, no hearing is required if the movant's allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of facts. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994).

In this case, the undersigned will recommend Friskey's claims, found in his Motion to Vacate, be denied. Furthermore, there is no factual dispute necessitating an evidentiary hearing. Even though Friskey's burden for establishing a right to an evidentiary hearing is light, it cannot be met because his allegation(s) clearly contradict the record and are conclusion rather than statements of fact. For these reasons, an evidentiary hearing is not necessary.

## VI. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Friskey's Motion to Vacate, [R. 207], be **DENIED**.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Particularized objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

This the 14th day of June, 2019.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge